UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOUA YANG,<br><br>　　　　　　Petitioner,<br><br>　v.<br><br>BRUCE SCOTT et al.,<br><br>　　　　　　Respondents. | CASE NO. 2:26-cv-00469-JNW<br><br>ORDER GRANTING IN PART PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER |

## 1. INTRODUCTION

This matter comes before the Court on Petitioner Doua Yang's motion for a temporary restraining order. Dkt. No. 12. On February 19, 2026, at 12:57 p.m. (PST), Respondents filed a notice of intent to remove Yang from the United States no earlier than 72 hours. Dkt. No. 10. Yang filed a timely TRO requesting a stay of his imminent deportation to Laos. Dkt. No. 12. On February 21, 2026, the parties filed a stipulated briefing schedule, wherein Respondents agreed to stay Yang's removal until the due date of Petitioner's reply brief to the TRO motion, February 25, 2026. The response has been submitted. Dkt. No. 17 at 14–16. Because the Court decides the motion for the reasons stated below, the Court enters this order

ORDER GRANTING IN PART PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER - 1

before Yang's reply is due. The Court GRANTS IN PART the motion for a temporary restraining order.

## 2. BACKGROUND

Doua Yang is detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He is a Hmong refugee who immigrated with his family to the United States in 1980 when he was five years old. He is stateless. His family is originally from Laos. His family fled Laos due to fear of persecution because of his father's assistance to the United States military in Laos during the Vietnam War. Yang was born on the run in the jungle during the family's escape from Laos.

For the past 24 years, Yang has been subject to a final removal order that Respondents have never enforced. Yang was ordered removed on December 3, 2001, based on criminal convictions from 1988. He was held in Immigration and Customs Enforcement (ICE) detention for three to four months after serving his prison sentence and before being released under an Order of Supervision ("OSUP"). He was released after his removal order to Laos could not be executed.

Since his release, Yang has complied with his annual ICE check-ins and other terms of his supervised release. On December 16, 2025, during one of Yang's regular check-ins, ICE agents revoked his OSUP and detained him at NWIPC.

On February 23, 2026, Yang moved to reopen his immigration proceedings in a Portland immigration court. Dkt. No. 16. Yang believes that his removal order was entered in error, due to changes in the interpretation of immigration laws that do not render his convictions "aggravated felonies" that subject him to mandatory

deportation. *Id*. In early February 2026, Yang and his wife, a United States citizen, with whom he has been in a committed relationship for twenty years, were officially married, providing him a potential pathway to apply for re-adjustment of his immigration status as a lawful permanent resident. Dkt. No. 6 ¶ 8.

### 3.  DISCUSSION

Yang requests a TRO because he believes that his imminent deportation would deny him due process by removing him from the country before his claims can be heard. Dkt. No. 12 at 15. Respondents oppose the motion, arguing mainly that ICE has obtained a travel document and anticipates removal in March 2026, that Yang's OSUP revocation complied with regulatory procedures, and that the Court lacks jurisdiction under 8 U.S.C. § 1252(g).

### 3.1   The Court has subject matter jurisdiction.

Respondents contend that 8 U.S.C. § 1252(g) strips this Court of jurisdiction over Yang's claims. Dkt. No. 17. In Respondent's view, Yang's objection to his removal to Laos is a challenge to the "execution" of a removal order within the meaning of Section 1252(g). This Court disagrees.

Section 1252(g) does not "prevent the district court from exercising jurisdiction over plaintiff's due process claims." *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998). The Supreme Court has interpreted Section 1252(g) narrowly, limiting it to only "three discrete actions": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*") (quoting 8 U.S.C. §

1252(g)) (emphasis in original). The Court rejected any reading of the statute that would cover "the universe of deportation claims," *id.*, and cautioned against interpreting it to "sweep in any claim that can technically be said to 'arise from'" these three actions, *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see AADC,* 525 U.S. at 482 ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.").

The Ninth Circuit has instructed that challenges to the right to meaningful notice and an opportunity to present a fear-based claim before removal fall outside Section 1252(g). *Ibarra-Perez v. United States*, 154 F.4th 989, 996–97 (9th Cir. 2025) (finding that purely legal challenges to last minute removal without the opportunity to present a fear-based claim fall outside Section 1252(g)). Yang raises due process claims in challenging his removal. He does not contend that ICE is forbidden from removing him from this country, rather that he has a right to meaningful notice and an opportunity to present a fear-based claim before he is removed. "Last minute" removal designations "violate a basic tenet of constitutional due process." *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

Yang also challenges the legality of his continued detention. Many courts—including this one—have held that challenges to the length of detention or the revocation of supervised release fall outside Section 1252(g) because they do not implicate one of the statute's three enumerated actions. *See, e.g.*, *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *2–3 (W.D. Wash. Dec. 19, 2025); *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *7 (D. Or.

ORDER GRANTING IN PART PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER - 4

Aug. 21, 2025) ("Courts have 'distinguished between challenges to ICE discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not.'" (quoting *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. May 2, 2025)). The Supreme Court's decision in *Zadvydas v. Davis* confirms that individuals with removal orders can challenge their confinement through habeas petitions, as long as the habeas petition does not require the court to review one of the three distinct actions listed in Section 1252(g). 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

On multiple grounds, Yang's claims fall outside Section 1252(g). This Court has subject matter jurisdiction to review Yang's claims.

### 3.2    The *Winter* factors support a TRO.

A TRO requires the moving party to show: (1) that he is "likely to succeed on the merits" of his underlying claim, (2) that he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in his favor," and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Under the sliding scale approach, a petitioner is entitled to a TRO if he has raised "serious questions going to the merits ... and the balance of hardships tips sharply in [his] favor." *All. for the Wild Rockies*, 632 F.3d at 1131 (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)). This approach allows a stronger showing of one Winter factor to offset a weaker showing of another. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–844 (9th Cir. 2024).

### 3.2.1 Yang has raised serious questions on the merits.

The Court finds that Yang has raised serious questions going to the merits of his due process claims along two tracks: first, that Respondents revoked his OSUP and detained him without constitutionally adequate notice or a hearing; and second, that Respondents are trying to remove him to Laos without affording him a meaningful opportunity to seek fear-based protections from removal.

Yang alleges that Respondents intend to deport him to Laos without affording him due process and statutory protections to which he is entitled. The Court credits Yang's allegations and finds that they raise serious questions about whether Respondents have violated his due process and statutory rights by detaining him and attempting to effectuate his removal without providing him

adequate notice and an opportunity to seek protections under the Convention Against Torture in reopened immigration proceedings.

Yang was detained on December 16, 2025, during his annual ICE check-in without any notice or a hearing. That same day, Yang's OSUP was revoked, also without notice or pre-deprivation hearing. This Court has found procedural due process violations based on similar facts. *See, e.g.*, *Vo v. Scott,* 26-cv-135-JNW (W.D. Wash. Feb. 17, 2026); *Aslan v. Wamsley*, et al., 25-cv-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026).

Respondents contend they have "followed all regulations in [Yang's] re-detention." Dkt. No. 17 at 16. Their own records show that they did not provide Yang adequate notice or a pre-deprivation hearing before revoking his OSUP. Dkt. No. 19-7 (Notice of Revocation of Release was served to Yang on December 16, 2025, the date of his detention). The evidence Respondents offer raises other questions. The Rosa Declaration cites a "past violation of OSUP" and a "significant likelihood of removal" as grounds for revocation. Dkt. No. 18 ¶¶ 6–8. But the violations cited—two missed check-ins in 2003 and a 2009 conviction—are the same ones for which Yang was briefly re-detained in April 2010 and released on a new OSUP the same day. *See id.* ¶ 6; Dkt. No. 19-6. Respondents do not explain how these violations justify revocation now when ICE itself found them insufficient fifteen years ago.

And the fact that Respondents have recently acted to remove Yang to Laos does not rebut his showing that serious questions exist regarding the procedures by which his OSUP was revoked and his removal initiated.

ORDER GRANTING IN PART PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER - 7

Within the last week, Yang learned that (1) Laos has issued him a "Laissez-Passer" one-time admission travel document, (2) Laos does not consider him a citizen or a national, (3) if deported, he will be subject to mandatory military confinement and released only if he has a "sponsor," an impossibility since he has no remaining family or relations in Laos, and (4) even if released from confinement, he will have limited economic and political rights, live under restrictive supervision, and not be permitted to leave the country. Dkt. No. 13 ¶¶ 37–39.

Yang has never had reason to challenge his removal to Laos, as he has lived under a "dormant" removal order that Respondents took no action on for more than 24 years. Yang contends that he has not had an opportunity to raise his claims in reopened immigration proceedings about his fears of persecution or torture if deported to Laos, or to seek withholding of removal. Dkt. No. 12 at 22. Respondents have not reopened removal proceedings or provided him notice and a meaningful opportunity to apply for fear-based protections from removal. Last minute orders of removal without the opportunity to address petitioner's fears in reopened removal proceedings and fears specific to that country violate due process. *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016); *Andriasian*, 180 F.3d at 1041.

### 3.2.2    The remaining *Winter* factors favor Yang.

The second Winter factor—irreparable harm—tips sharply in favor of a TRO. While the burden of removal alone does not "constitute the requisite irreparable injury," *Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011) (citation modified), the Court credits that Yang's removal to Laos would cause him irreparable harm

given the country conditions in Laos regarding stateless deportees and considering the unique facts of Yang's family history. Dkt. No. 4 at 2; Dkt. No. 12 at 3. Furthermore, Yang raises serious questions about whether his constitutional rights have been violated. When the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005).

The final two *Winter* factors merge when the Government is a party. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020). These factors also tip sharply in Yang's favor. The Court acknowledges the public interest in the enforcement of immigration laws and the prompt execution of removal orders, but the TRO imposes little to no burden on Respondents. Respondents are free to carry out their non-discretionary statutory duties in removal proceedings. On the other hand, absent a TRO, Yang will potentially face life-changing and irreparable harm.

No security bond is required under Federal Rule of Civil Procedure 65(c) because Respondents face no realistic likelihood of harm from enjoining their conduct. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

### 4. CONCLUSION

All four *Winter* factors support a TRO barring Yang's removal from the United States. However, Yang's request for immediate release from detention seeks the same relief ultimately sought by his habeas petition. *Nguyen v. Scott*, 2025 WL 2165995, at *7 (W.D. Wash. July 30, 2025) (denying TRO relief where petitioner requests the same relief in their habeas petition). The Court declines to grant that

relief at this stage; the already expedited habeas proceedings will allow for prompt resolution of Yang's claims on a full record.

Accordingly, the Court orders as follows:

1. Petitioner's motion for a temporary restraining order barring his removal from the United States or this jurisdiction is GRANTED. Dkt. No. 12.
2. Respondents ARE PROHIBITED from removing Petitioner from the Northwest ICE Processing Center without further order of this Court.
3. Because Respondents have filed a Return on the merits of the habeas petition, Dkt. No. 17, and the petition will soon be ripe for decision, the TRO will remain in effect pending the resolution of the habeas petition.
4. Respondent's motion for an extension of time to file a responsive pleading is DENIED as moot. Dkt. No. 8.

Dated this 25th day of February, 2026.

Jamal N. Whitehead
United States District Judge