UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOUA YANG, <br><br>　　　　　Petitioner, <br><br>　　v. <br><br>BRUCE SCOTT et al., <br><br>　　　　　Respondents. | CASE NO. 2:26-cv-00469-JNW <br><br> ORDER GRANTING IN PART HABEAS PETITION |

## 1.  INTRODUCTION

Doua Yang filed an amended petition for a writ of habeas corpus challenging his detention at the Northwest ICE Processing Center ("NWIPC"). Dkt. No. 4. He seeks (1) immediate release from custody; (2) injunctive relief against re-detention without due process; and (3) protection against removal to a third country. Dkt. No. 4 at 41. Yang also moves for a temporary restraining order to stay his removal and reopen his removal proceedings. Dkt. No. 12. The Government opposes his requests.

For the reasons below, the Court GRANTS in part Yang's habeas petition.

ORDER GRANTING IN PART HABEAS PETITION - 1

## 2. BACKGROUND

Doua Yang is 50 years old. Dkt. No. 13 ¶ 2. His father was a sergeant in the U.S.-backed "Secret Army" that the United States had trained and supported in Laos during the Vietnam War. *Id*. Yang believes that he was born in a jungle in Laos while his family fled persecution, just before they crossed the border into Thailand. *Id*. ¶ 3. His family eventually reached a refugee camp in Thailand and resettled in the United States as refugees in 1980 when Yang was five-years old. *Id*. ¶ 4. Yang became a lawful permanent resident that same year. Dkt. No. 19-1 at 2. He has lived in the United States ever since he entered as a child and has never left the country. *Id*. ¶ 6.

Yang is married to a U.S. citizen, Dkt. No. 6 ¶ 8, and has six siblings, all of whom are citizens or lawful permanent residents. Dkt. No. 13 ¶ 5. Although Yang was born in Laos, he is not a citizen of Laos or a citizen of any country—he is stateless. Laos law strips citizenship from anyone who leaves Laos for more than seven years to migrate to another country. Dkt. No. 7 ¶ 5.

In 1998, Yang was convicted of multiple crimes and served a prison sentence. Dkt. No. 13 ¶¶ 9–10. Following his release, he was placed in removal proceedings. *Id*. ¶¶ 11–13. On December 3, 2001, an Immigration Judge ("IJ") ordered Yang removed to Laos based on his criminal convictions. *Id*. ¶ 12. Yang was placed in immigration detention, but after three to four months in detention, the Government was unable to effectuate his removal to Laos and released him on an Order of Supervision ("OSUP") on or about February 21, 2002. *Id*. ¶ 13; Dkt. No. 18 ¶ 6. In 2009, Yang pled guilty to a misdemeanor for failing to comply with address

registration requirements. Dkt. No. 13 ¶ 16. He served another sentence, followed by a one-day hold in immigration custody before being released on a new OSUP on April 22, 2010. *Id.* ¶ 17; Dkt. No. 18 ¶ 6.

Since his 2010 release, Yang has complied with his OSUP without incident, never missing a check-in and adhering to all terms of supervised release. Dkt. No. 13 ¶ 18. For nearly sixteen years, Yang has lived under his OSUP and built a productive life in Oregon. He manages a family restaurant, supports his siblings, and serves as the primary caretaker for his wife, who suffers from a debilitating medical condition. *Id.* ¶¶ 28–35.

On December 16, 2025, Yang reported to the ICE field office in Richland, Washington, for his regular check-in appointment. *Id.* ¶ 22. ICE officers detained him. *Id.* ¶ 23. That same day, ICE agents presented Yang with a "Notice of Revocation of Release" stating that Yang's OSUP was being revoked due to a 2009 OSUP violation and because Laos had changed its "internal policy regarding the issuance of travel documents" such that there is now a "significant likelihood" of his removal in the "foreseeable future." Dkt. No. 19-7. The Notice stated that Yang would "promptly be afforded an informal interview" to submit evidence and respond to the reasons for revocation. *Id.* No such interview occurred. Dkt. No. 4 ¶ 25.

On February 2, 2026, ICE received a "laissez-passer" travel document for Yang that was issued by Laos. Dkt. No. 18 ¶ 10. The pass is valid for 90 days from the date of issuance on January 30, 2026. *Id.* On February 23, 2026, ICE served Yang with a "Notice of Imminent Removal" stating that Respondents "anticipate[] [Yang's] removal in March of 2026." *Id.* ¶ 11. That same day, Yang filed an

emergency motion in a Portland immigration court to stay his removal and reopen his immigration case, citing (1) changed country conditions in Laos, that form the basis for eligibility for asylum, withholding of removal, and/or protection under the United Nations Convention Against Torture ("CAT") and (2) subsequent change in the law and material facts that render him no longer removable and eligible to readjust his immigration status. *See generally*, Dkt. No. 16-1. On February 25, 2026, the immigration court granted Yang's emergency motion, staying his removal pending adjudication of his motion to reopen. Dkt. No. 21 at 7 n.2.

### 3.  DISCUSSION

**3.1  This Court has jurisdiction to hear Yang's claims.**

Respondents argue that 8 U.S.C. § 1252(g) precludes this Court from reviewing Yang's claims. Dkt. No. 17. Respondents argue that this Court "cannot lawfully enjoin [Yang's] removal or immigration proceedings." *Id.* at 15. Respondents are correct that the Court does not have jurisdiction to review challenges to Respondents' exercise of discretion to execute Yang's removal order. *Rauda v. Jennings*, 55 F. 4th 773, 778 (2022) (denying petitioner's request to seek a stay of removal pending the Board of Immigration Appeal's resolution of his motion to reopen). As a practical matter, however, the Court need not reach the question of whether it could stay Yang's removal, because an Immigration Judge has already done so—as noted above, the Immigration Court granted Yang's emergency motion to stay his removal proceedings. Dkt. No. 21 at 7 n.2.

What remains before this Court are Yang's constitutional claims challenging the legality of his detention, which fall comfortably outside Section 1252(g). *See, e.g.*, *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *2–3 (W.D. Wash. Dec. 19, 2025); *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *7 (D. Or. Aug. 21, 2025) ("Courts have 'distinguished between challenges to ICE discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not.'" (quoting *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. May 2, 2025)). Respondents do not argue otherwise. Thus, the Court finds that it has jurisdiction under 28 U.S.C. § 2241 and 28 U.S.C. § 1331 to hear Yang's claims.

**3.2   Legal standards.**

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends

to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

In addition, federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *See Francisco Lorenzo v. Bondi*, Case No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)). And "[i]n time-sensitive circumstances, the district court's authority to issue broad equitable relief encompasse[s] the authority to grant provisional relief 'to bring an ongoing violation to an immediate halt.'" *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978)).

Plaintiffs seeking equitable relief in the form of permanent injunctions must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would

not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); see *Francisco Lorenzo*, 2026 WL 237501, at *6 (applying permanent injunction standard to injunctive relief requested in immigration habeas proceedings).

### 3.3 Respondents violated their own regulations and due process by revoking Yang's OSUP and detaining him.

The Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law. U.S. Const. Amend. V. This protection extends to all persons within the United States, including noncitizens. *Zadvydas*, 533 U.S. at 693. So before revoking supervised release and re-detaining a noncitizen, the Government must satisfy procedural due process. Under *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), courts weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest to determine what process is constitutionally required.

This Court has applied that test and finds that due process requires pre-deprivation notice and a hearing before revoking a non-citizen's order of supervision and re-detaining them. *See Ledesma Gonzalez v. Bostock*, Case No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *7 (W.D. Wash. Oct. 7, 2025); *Vo v. Scott*, No. 2:26-CV-00135-JNW, 2026 WL 445046 *4 (W.D. Wash. Feb. 17, 2026); *Aslan v. Wamsley et al.*, Case No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (applying *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976))). Courts in this district and elsewhere have repeatedly reached the same conclusion. *See, e.g., Tessema v. Bondi,* No. C25-2330-

JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), report and recommendation adopted, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026); *Tesara v. Wamsley*, Case No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025). A "post-deprivation hearing[ ] cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *Ledesma Gonzalez*, 2025 WL 2841574, at *8–9 (quoting *E.A. T.-B.*, 795 F. Supp. 3d at 1324).

Separate from the constitutional floor, federal regulations impose their own procedural requirements when ICE revokes supervised release. These regulations "were intended to 'provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release.'" *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (quoting *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). Under 8 C.F.R. § 241.13(i), ICE may revoke a noncitizen's release if the noncitizen violates conditions of release, *id.* § 241.13(i)(1), or if changed circumstances create a significant likelihood of removal in the reasonably foreseeable future, *id.* § 241.13(i)(2). "Upon revocation," the noncitizen must be notified of the reasons for revocation and afforded "an initial informal interview promptly after his or her return to Service custody" to "respond to the reasons for revocation" and "submit any evidence or information" in opposition. *Id.* § 241.13(i)(3). The regulation further requires a "revocation custody

review" that includes "an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id*.

The Government failed to comply with its own regulatory requirements. First, the Notice relies in part on Yang's 2009 failure-to-register misdemeanor—a conviction that predates his most recent OSUP, issued April 22, 2010. Dkt. No. 18 ¶ 6. ICE was aware of this conviction when it issued the 2010 OSUP, and it cannot serve as a valid basis for revoking that OSUP over fifteen years later. *See, e.g.*, *Bedrosian v. Noem*, No. 5:25-CV-02814-KES, 2026 WL 127800, at *2 (C.D. Cal. Jan. 15, 2026) (convictions "of which ICE was aware when it issued the OSUP… are not a valid basis for revoking the OSUP"); *Delkash v. Noem*, No. 5:25-CV-01675-HDV-AGR, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (petitioner's lengthy criminal history, which was known to the Government before his OSUP was issued is not a basis for revocation). Second, the Notice's remaining justification—that "the country of Laos has since changed their internal policy regarding the issuance of travel documents for its citizens, and there is now a significant likelihood of your removal from the U.S. in the foreseeable future," Dkt. No. 5-7 at 2—is boilerplate language that gives Yang no information about the factual basis for revoking his OSUP and no basis to prepare a meaningful response. *See, e.g.*, *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 787 (D. Minn. 2025) ("Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the

ORDER GRANTING IN PART HABEAS PETITION - 9

reasons and submit evidence in opposition."); *Saengphet v. Noem*, 3:25-cv-2909-JES-BLM, 2025 WL 3240808, at *6–7 (S.D. Cal. Nov. 20, 2025) (Notice stating that ICE "has determined that you can be expeditiously removed from the United States pursuant to an outstanding order of removal against you" falls short of what is required under regulation and due process).

In addition to deficient Notice, the Government plainly denied Yang a prompt informal interview, in violation of 8 C.F.R § 241.13(i)(3). Yang's verified petition states that no informal interview occurred. Dkt. No. 4 ¶ 25. His traverse reiterates this, noting that the Government "offers no evidence at all — to rebut Petitioner's verified statements — that it conducted an informal initial interview, provided Petitioner an opportunity to respond with evidence, or conducted any evaluation of the information provided." Dkt. No. 21 at 3. The Government's return asserts that "ICE provided written notice, conducted the required interview, and complied with its procedures." Dkt. No. 17 at 2. But the record does not support this. The Rosa Declaration — the Government's sole evidentiary submission from the deportation officer managing Yang's case — describes the Notice of Revocation and the travel document but says nothing about an interview. Dkt. No. 18 ¶¶ 8–11. Respondents provide no interview record, no declaration from an interviewing officer, and no documentation that Yang was afforded an opportunity to respond or that a revocation custody review took place. In the face of Yang's verified statements, these failures are dispositive.

And it is too late to remedy this deficiency—the period for a "prompt" interview has long passed. *Delkash,* 2025 WL 2683988, at *5 ("A growing number of

ORDER GRANTING IN PART HABEAS PETITION - 10

courts have unequivocally found that the government's failure to follow its release revocation procedures—in particular the failure to give a detainee the required notice and interview—renders the re-detention unlawful."); *M.S.L. v. Bostock*, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (finding that an interview given 27 days after the noncitizen was taken into custody was not prompt); *Duong v. Noem*, 2025 WL 3268414, at *3 (S.D. Cal. Nov. 24, 2025) (finding that an interview given six weeks after the noncitizen was taken into custody was not prompt).

Respondents argue that the revocation of Yang's OSUP is justified because there is now *post-detention* evidence—the travel document obtained February 2, 2026—that demonstrates a significant likelihood of removal. Dkt. No. 17 at 9. But "the fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'" *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (citation omitted); *Yildirim v. Hermosillo*, C25-2696-KKE, 2026 WL 111358, at * 4 (W.D. Wash. Jan. 15, 2026) (factual disputes about Respondent's justification for petitioner's detention should be resolved at a pre-deprivation hearing). Confidence is no substitute for process. It is process that determines whether confidence is justified. And the Immigration Court's February 25, 2026, stay of Yang's removal greatly diminishes the Government's interest in continued detention, as it is unclear when or whether removal will occur.

The remedy for Respondents' regulatory failure is Yang's release, returning him to the status quo before his release was improperly revoked. Multiple courts have so held. *See, e.g.*, *Luis Sanchez Alfonso*, 2026 WL 395326, at *6; *Yildirim*, 2026

ORDER GRANTING IN PART HABEAS PETITION - 11

WL 111358, at *3–5; *Xayakesone v. Noem*, No. 25-CV-2995-JES-BJW, 2025 WL 3229102, at * 4 (S.D. Cal. Nov. 19, 2025); *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *9 (E.D. Cal. Sept. 5, 2025); *Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025); *Delkash*, 2025 WL 2683988, at *6. This Court reaches the same conclusion.

**3.4   Injunctive relief for future re-detention.**

Yang asks the Court for an order prohibiting his future re-detention absent notice and a hearing. Dkt. No. 4 at 41. Respondents do not address this request.

The Court finds that imposing conditions on any future re-detention is necessary to effectuate the intent of this order. Yang has demonstrated a concrete risk of re-detention: Respondents hold a travel document to Laos bearing his name. Yang is from a country being targeted with increased removal efforts, and the Government has already unlawfully re-detained him once without due process. Yang has suffered an irreparable injury in the deprivation of his physical liberty without due process. Monetary damages are unavailable against the Government in this context. The balance of hardships favors Yang, who lived in his community for nearly sixteen years under his OSUP without incident, over any burden on Respondents of providing constitutionally adequate process. And the public interest is served by ensuring that the Government complies with due process and its own regulations.

Accordingly, the Court prohibits the Government from re-detaining Yang without notice and an opportunity to be heard. *See, e.g.*, *Nguyen v. Bondi*, No. 2:25-

cv-02723-RAJ, 2026 WL 183819, at *6 (prohibiting future re-detention absent notice and a hearing); *Tzafir v. Bondi*, No. 25-cv-2067, 2026 WL 74088, at *4 (W.D. Wash. Jan. 9, 2026) (same). Yang's additional request that this Court also order Respondents to provide travel documents and a two-month self-departure window is denied for lack of supporting legal authority.

### 3.5    The Court does not reach Yang's continued detention claim.

Yang also argues that his continued detention violates due process because there is no significant likelihood he will be removed in the reasonably foreseeable future under *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). The Court declines to reach this issue. The question has not been fully briefed considering the immigration court's stay of removal, and neither party has addressed its expected duration or effect on the foreseeability of removal. Moreover, the relief Yang seeks through his *Zadvydas* claim—release—is independently warranted by the due process violations found above.

### 3.6    The Court denies Yang's request to stay his removal and to order Respondents to reopen his removal proceedings.

Yang's motion for a temporary restraining order asks the Court to (1) enjoin Respondents from removing Yang to Laos and to (2) order Respondents to reopen Yang's removal proceedings. Dkt. No. 12 at 26.

These requests are denied on two independent grounds. First, the immigration court has already granted Yang's emergency motion to stay his removal to Laos pending adjudication of his motion to reopen. Yang has thus obtained from the immigration court the essential relief he seeks from this Court on

this issue, rendering it moot. Second, to the extent any live controversy remains, these requests fall within the discrete actions barred by 8 U.S.C. § 1252(g), which deprives courts of jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*"). The Court rejected any reading of the statute that would cover "the universe of deportation claims," *id.*, and cautioned against interpreting it to "sweep in any claim that can technically be said to 'arise from'" these three actions, *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see AADC,* 525 U.S. at 482 ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). The Ninth Circuit has held that challenges to the Attorney General's exercise of discretion to execute a removal order are barred. *Rauda*, 55 F. 4th at 778.

Yang's request to enjoin removal and to reopen Yang's removal proceedings are, in effect, requests to override the Attorney General's discretionary power to "execute [a] removal order" and "commence proceedings"— relief this Court cannot grant under Section 1252(g).

**3.7   Yang's claims regarding third country removal are premature.**

Yang also asks the Court to enjoin third-country removal without notice and a meaningful opportunity to respond because it would impose unconstitutional punishment. Dkt. No. 4 at 28–35. On this record, the Court finds no steps towards

third country removal for Yang. *Yuksek v. Bondi*, No. 25-cv-2555, 2026 WL 60364, at *3 (W.D. Wash. Jan. 8, 2026) (granting relief where ICE had sent requests to Costa Rica, Panama, and Australia). Thus, the Court declines to address Yang's third country claims as unripe. *See Bui v. Scott*, No. 2:25-CV-02268-TMC, 2025 WL 3706796, at *4 n.1 (W.D. Wash. Dec. 22, 2025); *Uprety v. Bondi*, No. 2:25-CV-02443-JNW, 2026 WL 194227, at *5 (declining to address third country removal claims as unripe).

## 4. CONCLUSION

Accordingly, the Court ORDERS:

1. The Petition for Writ of Habeas Corpus is GRANTED IN PART. Dkt. No. 4.
2. Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) hours of this order, subject to the conditions of his prior OSUP.
3. Petitioner may not be re-detained unless (a) Respondents provide Petitioner with written notice of the basis for the proposed re-detention in advance; (b) an immigration court hearing is held to determine whether detention is appropriate.
4. Within FORTY-EIGHT (48) hours of this order, Respondents must provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.
5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F. 4th 1152,

1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

6. All other relief requested is DENIED without prejudice, as stated in this Order.

Dated this 6th day of March, 2026.

*[signature]*

Jamal N. Whitehead
United States District Judge